### MRS. ZULA JONES v. O. C. SWINDELL.

(Filed 11 September, 1918.)

**1. Easements—Pathways—Adverse Possession—User.**

In order for the owner of lands to acquire the right to use a passway over the lands of another to his own premises, the user must not only be under a claim of right for twenty years, but it must be open and with the intent to claim against the true owner, and not permissive.

**2. Same—Deeds and Conveyances—Reverter—Permissive User.**

Where lands granted for church purposes, under certain conditions, with a path leading thereto, laid out by the grantor, since deceased, have reverted to the grantor under the provisions of the conveyance, and has been partitioned among his heirs at law, the one acquiring the land on which the church was situated does not acquire a right to the pathway by adverse user, for the pathway, having been opened for the benefit of those attending church, the natural right to its use, nothing else appearing, ceases upon the discontinuance of the church.

**3. Same—Evidence.**

Where an heir at law of a deceased grantor claims the right, by adverse user, to a passway over lands of others, which has been divided in proceedings for partition, testimony that the parties had run a fence across the path before the proceedings were instituted is some evidence that the use was permissive and not adverse.

APPEAL by plaintiff from *Bond, J.,* at February Term, 1918, of BEAUFORT.

This is an action to have the rights of the plaintiff declared in a certain passway leading from Maple Street, in Pantego, across a lot on which the plaintiff now lives, and on which the Freewill Baptist Church was formerly situate, and to prevent the defendant from obstructing the same.

In 1882 Ephraim S. Radcliffe, who was then the owner of a tract of

land, a part of which was within the boundaries of the town of Pantego, conveyed a part thereof to the Freewill Baptist Church and laid out a passway from Maple Street to the church.

The deed provided for a reverter to the grantor, Radcliffe, or his heirs, upon certain conditions named in the deed, and under these conditions the land and the church reverted to the grantor, and he died seized thereof.

After his death the land was divided between his heirs at law, of whom the plaintiff was one, and lot No. 2 was allotted to the plaintiff. The church stood on this lot, and the plaintiff converted it into a residence, and is now living in it.

The plaintiff claimed an adverse user of the passway for more than twenty years.

At the conclusion of the evidence his Honor entered judgment of nonsuit, and the plaintiff excepted and appealed.

*Ward & Grimes for plaintiff.*
*Small, MacLean, Bragaw & Rodman for defendant.*

ALLEN, J. We are of opinion, on an inspection of the whole record, that there is no sufficient evidence of an adverse possession of the passway by the plaintiff or by the public to confer any rights on the plaintiff, and that the evidence does not show that the passway was open and existing at the time of the partition proceeding, so as to entitle the plaintiff to invoke the principle that the several parcels of land allotted in a partition proceeding are subject to the benefits and burdens of an existing passway, although there may be no reference to the passway in the partition proceedings.

It was held in *Snowden v. Bell,* 159 N. C., 499, following earlier decisions, that a mere user for twenty years was not sufficient to confer the right to a passway, and that to have this effect the user must not only be under a claim of right, but it must be open and with an intent to claim against the true owner and not permissive.

In this case all of the evidence tends to prove that the passway was open for the benefit of those attending the church, and naturally the right to its use, nothing else appearing, would cease when the church was discontinued, and it appears from the plaintiff's evidence that, in recognition of this fact, the plaintiff and her mother had closed the passway, and that there were fences across it at the time of the partition proceeding.

The plaintiff contended, among other things, that Radcliffe "opened this way, leading from the street to the church, through his land for general public use. He allowed the members of the church to go through

his land." "I don't remember for just how long the church was used. I think it was about 1906 or 1907 that they abandoned this church and it came back. Mother took possession of the church building, but didn't do anything with it until it was divided and given to me, and I lived there with my mother. She built a fence across this way that I am talking about just for a short time. She built a fence across the way that I am talking about. That fence crossed the way near the church and down near the church, too, at a time when she and I owned all of the land when it was undivided. At the time that division was made, this way that I am talking about had a rail fence across it. The rails just put Mr. Ricks' fence and mother's together, and the street was maintained just as it was. At the time of this division in 1913 the way was closed up by a fence across each end of it, and the fence was put there by my mother and joined Mr. Ricks' fence."

· This evidence clearly shows that the passway was opened for the benefit of the church, and that the user of it by those attending the church was permissive and not adverse, and that after the church was discontinued and there was a reverter to Radcliffe, that his heirs at law exercised their right to close it, and that it was closed at the time of the partition proceeding, and, if so, the plaintiff has no right which she could enforce in this action.

Affirmed.